IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DRAVION SANCHEZ WARE

Criminal Action No.
1:17-CR-447-TCB-JSA-2

Civil Action No.
1:25-CV-1119-TCB-JSA

## RESPONSE TO DEFENDANT'S MOTION UNDER § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The United States of America, by Richard S. Moultrie, Jr., Acting United States Attorney, and Bret R. Hobson, Assistant United States Attorney for the Northern District of Georgia, files this response to Defendant Dravion Ware's § 2255 motion (Doc. 342). In his § 2255 motion, Ware seeks to collaterally attack his convictions and sentence on several grounds, each arguing his trial counsel was constitutionally ineffective in some way. Liberally construing Ware's pro se motion, as we must, Ware argues that his counsel was deficient in the following dozen ways: (1) by not informing him of the consequences of going to trial versus pleading guilty, specifically by not "appris[ing] Ware that, if convicted, he would face at least a 30-year sentence" and that he might face up to life in prison (Doc. 342 at 4, 32, 37-42);[1] (2) by not conducting an adequate and independent pretrial investigation, specifically by not investigating the validity of the initial

_____

[1] Citations to Doc. 342 are to the page number in the ECF header

arrest warrant and not requesting funds for a private investigator (*id.* at 4, 33-35); (3) by not attempting to negotiate a favorable plea agreement (*id.* at 4, 37); (4) by not subpoenaing and calling defense witnesses (*id.* at 5, 29); (5) by not challenging the basis for the initial arrest warrant (*id.* at 42-43); (6) by not highlighting at trial the absence of testimony by Ware's co-defendant (*id.* at 43-44); (7) by not requesting a competency hearing (*id.* at 44-45); (8) by not requesting certain unspecified jury instructions (*id.* at 45); (9) by not objecting to the PSR's finding that Ware attempted to murder a victim (*id.* at 6, 47-48); (10) by not arguing for mitigation of punishment (*id.* at 6, 48-49); (11) by not objecting to the substantive reasonableness of Ware's sentence (*id.* at 6, 48-49); and (12) by failing to raise any of these issues on appeal (*id.* at 50).[2]  This Court should deny Ware's motion without an evidentiary hearing because all of Ware's claims are either affirmatively contradicted by the record or patently frivolous.

## Background

### *Probable Cause Supporting Ware's Arrest*

On November 16, 2017, the government filed a criminal complaint, charging Ware and a co-defendant with committing a Hobbs Act robbery and discharging a firearm during the robbery.  (Doc. 1.)  Based on the complaint and the affidavit

---

[2] Although Ware also broadly asserts that his counsel did not "[i]nform Ware of his strategy, any affirmative defenses and his theory of his defense" (*id.* at 5) or "[c]orrectly discuss and explain the PSR with Ware prior to the sentencing hearing" (*id.* at 6), Ware's brief identifies the specific alleged errors at trial (*id.* at 36-37, 42) and sentencing (*id.* at 47-49) that supposedly prejudiced him.  The government herein responds to the purported specific errors rather than the broad statements.

attached thereto, U.S. Magistrate Judge Janet F. King issued federal arrest warrants after finding that there was probable cause to believe Ware and the co-defendant committed the crimes.  (*See id.*)  The FBI subsequently arrested Ware on November 24, 2017.  (*See* Doc. 11.)  And on November 28, 2017, following a preliminary hearing, Magistrate Judge King again found that probable cause supported Ware's arrest on the criminal complaint.  (Doc. 18; *see also* Doc. 108 (transcript of the hearing).)

*Ware's Indictment*

On December 19, 2017, a federal grand jury indicted Ware and his co-defendant, charging them with committing five Hobbs Act robberies, brandishing a firearm during three of the robberies, discharging a firearm during two of the robberies, and being felons in possession of a firearm and/or ammunition.  (Doc. 20.)  Over the next year and a half, the grand jury returned three superseding indictments.  (Docs. 78, 122, 173.)  The third and final superseding indictment  charged Ware and his co-defendant with one count of conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); five counts of committing a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts Two, Four, Six, Eight, and Ten); three counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Three, Nine, and Eleven); two counts of discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Counts Five and Seven); and three counts of being a felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. § 922(g)(1).  (Doc. 173.)

3

*Ware's Competency*

Ware's counsel moved to have Ware examined to determine whether he was competent to stand trial, and this Court granted the motion. (Docs. 34, 41.) After the psychological examination found that Ware was competent, Ware's counsel no longer contested the issue, and the case was certified as ready for trial. (Doc. 47.)

*Plea Offers*

During the course of the case, the government extended two plea offers to Ware. First, after Ware's counsel informed the government that "Ware has informed me that he will consider any plea offer the Government might be willing to make as long as cooperation is not a condition thereof," the government offered Ware the option of pleading guilty in exchange for a fifty-year binding sentence. (*See* Exhibit 1, attached hereto.) Five days after the government conveyed this offer, Ware's counsel responded, "the plea offer that is listed below was communicated to Mr. Ware and rejected." (*Id.*)

Second, on the eve of trial, the government offered to let Ware plead guilty to the five § 924(c) counts, which carried a combined mandatory minimum sentence of forty-one years' imprisonment. (*See* Exhibit 2, attached hereto.) As part of the offer, Ware could argue for a forty-one-year sentence, and the sentence would be capped at fifty years. (*Id.*) At the request of Ware's counsel, the government provided a draft plea agreement that memorialized these terms, so Ware's counsel could go over it with Ware at their meeting later that morning. (*Id.*) The government's plea offer explained that if Ware were convicted at trial, he would

4

likely face a guidelines range of 235-291 months plus the mandatory 41 years consecutive, and the draft plea agreement stated that the statutory maximum Ware faced in this case was life in prison. (*Id.*)  After meeting with Ware, Ware's counsel informed the government that "Ware declines the offer." (*See* Exhibit 3, attached hereto.)

*Ware's Pro Se Pretrial Motions*

Prior to trial, Ware filed numerous pro se motions.  For instance, Ware moved to replace his first appointed counsel (*see* Docs. 59, 61), and this Court granted the request (Doc. 63); Ware twice moved to replace his second appointed counsel (Docs. 85, 97), and this Court eventually granted the request (Docs. 93, 104-106); and Ware moved to replace his third appointed counsel (Doc. 143), but this Court denied the request (Doc. 149).  In his motions to replace his various attorneys, Ware raised many of the concerns about his attorneys' performance that now underly his § 2255 motion, such as complaining that his attorneys failed to challenge the probable cause supporting his arrest (*see* Doc. 61 at 1-2; Doc. 97 at 1); failed to investigate his case or provide adequate assistance (Doc. 85 at 1; Doc. 143 at 1); failed to pursue a plea agreement or explain the consequences of proceeding to trial versus signing a plea agreement (Doc. 97 at 1-2); and failed to present any trial strategy (Doc. 97 at 2).  But this Court rejected those complaints, ruling that Ware had shown no deficiency by any of his attorneys and finding that Ware's third attorney in particular had vigorously represented him by, among other things, "fil[ing] multiple motions for expert and/or investigative services, and multiple motions seeking dismissal, preclusion of evidence, and

5

other relief." (Doc. 149 at 1-2.) After trial, Ware renewed his motion to dismiss his third attorney (Doc. 227), and the district court denied the motion, again concluding that Ware's attorney had not provided deficient representation (Doc. 230 at 1-2.)

Despite being represented and complaining that his attorneys refused to challenge the probable cause supporting his arrest, Ware himself filed multiple pro se motions raising this argument. (*See* Docs. 98, 140.) And this Court recommended denying one such motion, explicitly finding that sufficient probable cause supported the arrest:

> [T]he Court clearly finds that the Complaint [1] is based on probable cause. . . . The identification of the Defendants in the Complaint was based not just on anonymous tips but also on images and photographs that link the Defendants to the robbers depicted in the robberies as well as other information. These facts were sufficient to show probable cause, and leave to file should be denied as futile on this additional basis.

(Doc. 151 at 3-4 (noting that not only was there no basis to dismiss the complaint, but also there was no basis to suppress any evidence recovered at the time of arrest for the additional reason that *Leon*'s good-faith exception would apply).) The district court adopted this Court's recommendation. (Doc. 157 at 4.)

*Ware's Trial*

After Ware's co-defendant pled guilty (Doc. 186), Ware proceeded to trial alone on the third superseding indictment. (Doc. 198.) During opening statements, Ware's counsel asserted that the government would base its case in part on testimony from Ware's co-defendant who "pled guilty and has the

6

potential of receiving four life sentences." (Doc. 294 at 12-13.)[3]  The government

called more than thirty witnesses to testify but ultimately did not call Ware's co-

defendant.  (*See* Doc. 207.)  After the government rested its case, Ware's counsel

called two witnesses during the defense's case, including a private investigator

who they had hired.  (*See* Doc. 297 at 19-32.)  During closing argument, the

government acknowledged that it had never called the co-defendant to testify.

(*See* Doc. 297 at 71-72.)

Ware's counsel proposed jury instructions and objected to several instructions

that the government had proposed.  (Doc. 202; Doc. 297 at 4-17.)  The jury

convicted Ware on all of the robbery and brandishing/discharging counts.[4]

(Doc. 209.)

*Ware's Sentencing*

After the U.S. Probation Office issued a presentence investigation report

(PSR), the government suggested that under Application Note 5 to § 2B3.1, an

upward departure may be warranted because Ware intended to murder a victim

during one of the robberies when he shot her in the back from point-blank range

as she was cowering on the floor.  (*See* PSR at 43.)  Before sentencing, Ware's

counsel filed a sentencing memorandum that objected to several sentencing

guideline enhancements and included substantial mitigating information about

---

[3] Citations to the trial transcript refer to the ECF pagination rather than the pagination of the transcript itself.

[4] The additional § 922(g)(1) counts would have been tried after the other counts in a bifurcated proceeding (*see* Docs. 153, 157), but the government dismissed them after the trial on the other counts.

Ware's childhood, his mental deficits, his psychological condition, and his conditions of confinement.  (*See generally* Doc. 276.)  Included with the memorandum was a report of a doctor's psychological examination of Ware. (Doc. 276 at Ex. 1.)

At sentencing, Ware's counsel reiterated his guideline objections, opposed the attempted-murder upward departure the government had requested, highlighted the mitigating evidence he had submitted with his sentencing memorandum, and requested a forty-one-year sentence, which was the mandatory minimum.  (*See* Doc. 299 at 5-6, 17-18, 18-19, 23, 24-25.)  Ware confirmed that he had read the PSR, and he did not ask any questions about it or express any confusion.  (*See id.* at 2.)  Ware also discussed his difficult childhood. (*Id.* at 25-26.)

After hearing from the parties, the district court agreed with the government that the attempted-murder upward-departure provision applied, and it sentenced Ware to life in custody.  (*Id.* at 18, 29-32; Doc. 279.)  Ware's counsel then objected to the procedural reasonableness of the upward departure, and to the substantive reasonableness of the sentence as a whole.  (Doc. 299 at 33.)

*Ware's Direct Appeal*

Ware timely appealed his conviction and sentence.  (Doc. 280.)  On direct appeal, Ware argued that the district court erred in four respects: (1) by not holding a *Daubert* hearing on the admissibility of expert fingerprint testimony; (2) by admitting lay identification testimony; (3) by instructing the jury regarding flight or concealment; and (4) by including a physical-restraint sentencing

enhancement. *United States v. Ware*, 69 F.4th 830, 835 (11th Cir. 2023). The Eleventh Circuit, in a published opinion, rejected Ware's arguments and affirmed his convictions and sentence. *See generally id.*

### *Ware's Current § 2255 Motion*

Now before this Court is Ware's § 2255 motion in which he seeks to collaterally attack his convictions and sentence. (Doc. 342.) Although he nominally asserts three grounds for relief (*see id.* at 4, 5, 6), if we liberally construe his motion, as we must, he appears to raise about a dozen ways that his counsel supposedly provided ineffective assistance (*see generally id.*). But all of Ware's claims are either affirmatively contradicted by the record or patently frivolous. Accordingly, this Court should deny Ware's motion without an evidentiary hearing.

## **Argument and Citation of Authority**

None of Ware's arguments are availing. Furthermore, because the files and records of the case show Ware is entitled to no relief, this Court need not hold an evidentiary hearing.

**1. None of Ware's claims regarding alleged ineffective assistance of counsel have merit.**

To succeed on an ineffective-assistance-of-counsel claim, a habeas petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and there is "a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." *Id.* at 689. After all, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

To establish the second prong, a habeas petitioner must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

As a threshold matter, the record contradicts most of Ware's claims about his counsel's actions. Specifically, contrary to Ware's assertions, his counsel (1) informed him of the consequences of going to trial versus pleading guilty when counsel presented him with the government's two plea offers, the second of which specifically discussed the mandatory minimum and statutory maximum sentences that Ware faced (*see* Exhibits 1, 2, and 3, attached hereto, which memorialize the parties' plea negotiations); (2) conducted an independent investigation of the facts of the case and hired a private investigator who testified at trial (*see* Doc. 297 at 19-32 (defense witnesses' testimony); *see also* Doc. 149 at 1-2 (this Court listing some other actions Ware's third counsel took on his behalf);

Doc. 230 at 1-2 (district court adopting this Court's Report & Recommendation); (3) attempted to negotiate a favorable plea agreement, obtaining two offers from the government (*see* Exhibits 1, 2, and 3, attached hereto); (4) subpoenaed and called defense witnesses (*see* Doc. 297 at 19-32); (5) requested a competency hearing and obtained a psychological examination (*see* Docs. 34, 41, 47); (6) objected to the district court's finding that Ware attempted to murder a victim (Doc. 299 at 17-18); (7) argued at sentencing for mitigation of punishment (Doc. 276 at 11-16 & Ex. 1; Doc. 299 at 18-19, 23; *see also id.* at 25-26 (Ware discussing his difficult childhood)); and (8) objected to the substantive reasonableness of Ware's sentence (Doc. 299 at 33).

Ware's remaining claims—that his counsel (1) refused to challenge the basis for the initial arrest warrant; (2) chose not to highlight at trial the absence of testimony by the co-defendant; (3) chose not to request certain unspecified jury instructions; and (4) chose not to raise any of these issues on appeal—fail for the reasons explained below.

### A. Ware's counsel's failure to challenge the basis for the initial arrest warrant was neither deficient nor prejudicial.

"A lawyer cannot be deficient for failing to raise a meritless claim . . . ." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Here, Ware's counsel rightly refused to challenge the basis for the arrest warrant, because the affidavit underlying the criminal complaint and the evidence presented at the preliminary hearing amply established probable cause. (*See* Docs. 1, 18, 108.)

11

Moreover, if Ware's counsel had filed such a motion, there is not a reasonable probability that the result of the proceeding would have been different. After all, in denying one of Ware's pro se motions, this Court held, "if necessary to reach the merits of the probable cause question, the Court clearly finds that the Complaint [1] is based on probable cause." (Doc. 151 at 3; *see also* Doc. 157 at 4 (adopting this Court's Report & Recommendation).)

### B. Ware's counsel's decision not to highlight at trial the absence of testimony by the co-defendant was neither deficient nor prejudicial.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Here, counsel's decision not to highlight the absence of the co-defendant's testimony is a classic strategic choice. Moreover, Ware cannot establish prejudice when the government itself highlighted for the jury the fact that the co-defendant had not testified. (*See* Doc. 297 at 71-72.)

### C. Ware's counsel's decision not to request certain unspecified jury instructions was neither deficient nor prejudicial.

Because Ware failed to identify any particular jury instruction that he believes his counsel should have requested, Ware cannot establish that his counsel's performance was deficient. In any event, given the overwhelming evidence of Ware's guilt, *see Ware*, 69 F.4th at 849 n. 14 (describing one detective's testimony as "a mere drop in the, at the very least, bathtub of evidence the Government

presented" against Ware); *see also id.* at 844-45 (summarizing some of the significant evidence presented at trial), even if Ware identified any such jury instruction, he could not establish that the result of trial would have been different. *See Bester v. Warden*, 836 F.3d 1331, 1339 (11th Cir. 2016) (holding that even if the defendant's counsel's performance was deficient for failing to request a no-adverse-inference instruction, the overwhelming evidence of guilt demonstrated a lack of prejudice).

### D. Ware's counsel's decision not to raise any of these issues on appeal was neither deficient nor prejudicial.

"[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Even as to meritorious claims, counsel may exercise his or her professional judgement in determining which issues to raise on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). As discussed above, none of the claims Ware raised in his § 2255 motion is meritorious, and even if they were, Ware's appellate counsel properly exercised her professional judgement in focusing on the four issues she raised in his appeal.

### 2. This Court need not hold an evidentiary hearing on Ware's claims because they are frivolous and the files and records of the case show he is entitled to no relief.

The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991). Moreover, an evidentiary hearing is

13

unnecessary when the petitioner's allegations are "affirmatively contradicted by the record" or if such claims are "patently frivolous." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). Here, the files and records of the case conclusively show that Ware is entitled to no relief and that his clams are patently frivolous and/or affirmatively contradicted by the record. Thus, no evidentiary hearing is required.

## Conclusion

For the foregoing reasons, this Court should deny Ware's § 2255 motion without an evidentiary hearing.

Respectfully submitted,

RICHARD S. MOULTRIE, JR.
  *Acting United States Attorney*


/s/BRET R. HOBSON
  *Assistant United States Attorney*
Georgia Bar No. 882520
Bret.Hobson@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

15

## Certificate of Service

The United States Attorney's Office served this document today by sending a copy by first class mail with sufficient postage to:

> Dravion Sanchez Ware
> 71209019
> MCCREARY U.S. PENITENTIARY
> P.O. BOX 3000
> PINE KNOT, KY 42635

May 1, 2025

/s/ BRET R. HOBSON
BRET R. HOBSON
*Assistant United States Attorney*