**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DRAVION SANCHEZ WARE, | : | MOTION TO VACATE |
| Fed. Reg. No. 71209019, | : | 28 U.S.C. §2255 |
|    Movant, | : | |
| | : | CRIMINAL NO. |
|      v. | : | 1:17-CR-447-SDG-JSA-2 |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
|    Respondent. | : | 1:25-CV-1119-SDG-JSA |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant Dravion Sanchez Ware filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. §2255 and seeks to challenge the constitutionality of his convictions and sentences in the Northern District of Georgia. (Doc. 342). The matter is before the Court on the §2255 motion [Doc. 342], the Government's response [Doc. 348], and Movant's reply [Doc. 352].

I.    Factual and Procedural History

    A.    Facts

From October 7 to November 10, 2017, Movant and co-defendant Tabyron Rashod Smith committed nine armed robberies in metro Atlanta – three spas, four massage parlors, a nail salon, and a restaurant. A brief summary of the relevant evidence presented at trial follows.[1]

---

[1]    In its decision on Movant's appeal, the Eleventh Circuit set forth the evidence presented at trial in methodical detail, as well as a summary thereof. *United States*

The first robbery occurred on October 7, 2017, where three black men entered the Spring Spa in Atlanta around 1:00 a.m. When a young employee saw one of the men with a pistol, she ran outside, flagged a taxi down, and used the taxi driver's phone to call 911. While she was on the phone she saw the three men leave in a dark red car, having stolen her phone.

In the days and weeks that followed, two young black men committed several more robberies, most of which involved a man with a hooded sweatshirt who was holding a gun in his right hand, and a left-handed man wearing a hat.[2] During all of those robberies the men threatened and/or used violence with their guns and stole cash, purses, wallets, cell phones, keys, IDs and jewelry, and in almost all of the robberies witnesses saw the men enter or exit in a dark red sedan. During the robbery of Cedar Massage in Atlanta on October 10, the hooded right-handed robber took a mint out of a heart-shaped dish on the welcome counter, put the mint in his mouth, removed the wrapper from his mouth, and placed the wrapper back into the bowl.

In the course of the robbery of the Qi Clay Sauna on October 13, 2017, the right-handed robber pistol-whipped the manager in the head multiple times, resulting in the magazine of his pistol falling out, which was later recovered by police. During

---

*v. Ware*, 69 F.4th 830, 836-39 (11th Cir. 2023). The facts herein are taken in relevant part from that opinion.

[2] A third black young man was involved in at least one more of the robberies in addition to Spring Spa.

the armed robbery of the Lush Nails & Spa in Buckhead on October 20, one or both of the robbers hit an employee over the head, kicked a woman in the face, hit another woman in the back of the head with a gun causing her to smash her face on the tile floor, and kicked and threatened to kill someone they thought had made a call. At the Kochi Maru restaurant on October 24, the right-handed man with the hood jammed his gun in the owner's face, shot a customer in the leg and another woman through the leg and left side of her calf, and shot the owner in the back at close range before leaving. At the November 10 robbery of New You Massage in Roswell, the robbers attempted to take some bags from the back of the store and smashed the butt of a gun on a woman's head to do so. The robbers also stole the owner's cell phone, which the owner was able to track to a median on Georgia 400 where it was ultimately recovered by police.

Movant was arrested pursuant to a warrant on November 22, 2017, after FBI agents found him hiding under a bed in the upstairs bedroom of an apartment. A cellphone was found under the bed and a pistol under the mattress.[3] Agents found clothing consistent with that worn by the right-handed robber nearby.

A crime scene investigator pulled a latent fingerprint off the New You Massage owner's phone, which was tested and matched Movant's middle finger.

---

[3]    The ballistics on the gun found under the mattress did not match the gun used in the shooting at Kochi Maru.

3

Agent Winn, the lead case agent, as well as Agent Costa, identified Movant in the surveillance video as the same person in pictures and selfies Movant had on his cell phone, including his visible tattoos.  Investigators explained the modus operandi evidence applicable to most of the robberies that included the robbers' appearance, dress, hand dominance, and getaway vehicle.

The Government introduced pictures of the car believed to be the getaway car, which had been painted white and contained Korean currency and cigarette butts, as well as a temporary vehicle tag in the glovebox. The Government showed surveillance footage from seven of the nine armed robberies and presented eyewitnesses from almost every robbery.  Cell location data placed Movant or Smith near five of the businesses at the time those businesses were robbed, and the jury was shown incriminating searches on the cell phone found with Movant when he was arrested.  Those searches included addresses of the robbed businesses before the robberies; searches for weapon sales coinciding with the right-handed robber losing the magazine of his pistol at the Qi Clay robbery; and after the FBI had released information to the press asking for assistance with the investigation, "Channel 2 News most wanted," "Robbery crew arrested of terrorizing at least nine restaurants, businesses," "what kind of phones can be traced," and "Dravion Ware."  Finally, a DNA expert introduced DNA evidence matching Movant to the mint wrapper left at

4

Cedar Massage and matching Movant and Smith to cigarette butts, a hat, and a water bottle found in the car.

B.     Procedural History

On December 19, 2017, a grand jury in the Northern District of Georgia returned an indictment against Movant and Smith, charging them with committing five Hobbs Act robberies, brandishing a firearm during three of the robberies, discharging a firearm during two of the robberies, and being felons in possession of a firearm and/or ammunition.  (Doc. 20).  The grand jury later returned three superseding indictments [Docs. 78, 122, 173], the third and final indictment charging Movant and Smith with: one count of conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. §1951(a) (Count One); five counts of committing a Hobbs Act robbery in violation of 18 U.S.C. §1951(a) (Counts Two, Four, Six, Eight, and Ten); three counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. §924(c)(2)(A)(ii) (Counts Three, Nine, and Eleven); two counts of discharging a firearm during a crime of violence in violation of 18 U.S.C. §924(c)(1)(A)(iii) (Counts Five and Seven); and three counts of being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. §922(g)(1). (Doc. 173).  On July 23, 2019, Movant's co-defendant entered a guilty plea to Counts One, Three, Five, Seven, and Eleven.  (Doc. 186).  He was later sentenced to a total of 324 months of imprisonment.  (Doc. 266).

### *Counsel and Pre-trial Motions*

Movant's first counsel, Paul Cognac, was appointed to represent Movant on November 24, 2017. (Doc. 11). On January 28, 2018, Mr. Cognac filed a motion for a psychiatric exam [Doc. 34], which the Court granted [Doc. 41]. After receiving the result thereof which found that Movant was competent to stand trial, Mr. Cognac no longer contested Movant's competency and the case was certified ready for trial. (Doc. 47).

On many occasions before trial, Movant argued incessantly that the charges against him should be dismissed because the warrant for his arrest was based on an informant's tip and therefore lacked probable cause. Movant raised this issue in several motions to replace his attorneys, claiming that counsels' refusal to file a motion to dismiss on that basis provided ineffective assistance. (*See* Docs. 59, 61, 85, 97, 304, 305).[4] During several hearings addressing the motions for new counsel, the Court found that counsels' advice and reasoning for not filing a motion to dismiss was legally correct and/or reasonable, and that Movant had not demonstrated that counsel was deficient in refusing to do so. (*See* Doc. 304 at 5-8, 14-19, 24; Doc. 149). The Court further found that Movant's repeated requests "at most reflect

---

[4]    Movant also attempted to raise this issue through, *inter alia*, a *pro se* pretrial motion [Doc. 98], which was denied [Doc. 151, 157], and at his arraignment for the second superseding indictment [Doc. 306].

disagreements with the otherwise competent legal advice that he has received (and generally unreasonable or unrealistic disagreements at that, based on Defendant's misunderstandings of legal issues)." (Doc. 149). The Court nevertheless granted two of Movant's many motions to substitute counsel. (Docs. 63, 105).

Finally, on several occasions the Court rejected Movant's argument, *i.e.,* that the charges against him should be dismissed because the complaint on which the arrest warrant was based was not supported by probable cause. Specifically: (1) after the preliminary hearing, the Court already found that probable cause supported the complaint and bound the matter over for consideration by the grand jury [Doc. 8]; (2) the complaint was no longer the operative charging instrument, as the grand jury made its own finding of probable cause when issuing the first, second superseding, and third superseding indictments, all of which constituted independent probable cause determinations [Docs. 20, 122, 173]; and (3) the Complaint was, in fact, based on probable cause. (*See generally* Doc. 151).

### *Plea Negotiations*

On December 10, 2018, Movant's second counsel, Adam Hames, sent an email to the Government indicating that Movant had informed Mr. Hames that he would consider an offer the Government would be willing to make as long as it did not require cooperation as a condition thereof. (Doc. 348-1). On December 12, 2018, the Government offered a binding plea for fifty years, explaining that fifty

years was the best the Government was willing to offer "[i]n light of the shootings and other violent conduct against numerous victims at numerous robberies." (Doc. 348-1 at 1). Mr. Hames responded on December 17, 2018, and stated that the plea offer was communicated to Movant and that he rejected it. (*Id.*).

Movant's third counsel, Gary Spencer, contacted the Government the week before trial to see if they could work out a plea agreement. (Doc. 348-2 at 2). The Government offered to let Movant plead guilty to the five §924 counts, which carried a combined mandatory minimum sentence of forty-one (41) years of imprisonment. (*Id.*). As part of the offer, the Government indicated that Movant could argue for a forty-one (41) year sentence, and that any sentence would be capped at fifty years. (*Id.*). In connection with the offer, Government provided a draft plea agreement that memorialized the terms so that counsel could bring it with him to discuss it with Movant later that morning. (*Id.* at 1, 4-26). The Government's plea offer explained that if Movant were convicted at trial he would likely face a guideline range of 235-291 months plus the mandatory forty-one years to be served consecutively, and the draft plea agreement stated that the statutory maximum Movant faced on several of the counts was life imprisonment. (*Id.* at 2, 7, 8, 9, 10, 11). On July 26, 2019, Mr. Spencer notified the Government that Movant declined the offer. (Doc. 348-3 at 1).

Following a four-day trial, on August 2, 2019, the jury convicted Movant on all counts. (Docs. 198, 200, 203, 205, 206, 209). After the Presentence Investigation

Report ("PSR") [Doc. 283] was prepared, the Government suggested that under Application Note 5 to §2B3.1 of the Sentencing Guidelines, an upward departure was warranted based on the fact that Movant shot a victim in the back from point-blank range while she was cowering on the floor.[5] (*See* PSR ¶42; Doc. 283 at 50 (Gov't Resp. to PSR)). Before sentencing, Movant's counsel submitted a sentencing memorandum in which counsel: (1) objected to the two-level enhancement for physically restraining the victims under U.S.S.G. §2B3.1(b)(4)(B); (2) objected to Movant being sentenced on the §924 counts because the underlying crime was not a crime of violence; (3) objected to the mandatory stacking of the §924(c) counts; and (4) presented mitigating information including Movant's childhood, his mental deficits, and his conditions of confinement. (Doc. 276). Counsel also included a report of a doctor's psychological examination of Movant.[6] (Doc. 276-1).

At sentencing, Movant told the Court that he had read the PSR. (Doc. 299 at 3). Thereafter, Movant's counsel reiterated his guideline objections, opposed the upward departure for threat of death under Application Note 5 to U.S.S.G. §2B3.1, highlighted the mitigating evidence he had presented in the sentencing

---

[5]    Pursuant to U.S.S.G. §2B3.1(b)(2)(F), the offense level is increased by two levels if a threat of death is made during the robbery. Application Note 5 provides that this enhancement applies where the defendant demonstrates an intent to kill the victim.

[6]    This evaluation was requested by Movant's third counsel for the purpose of presenting mitigating information at sentencing. (Doc. 276-1 at 1).

memorandum, and requested the forty-one (41) year mandatory minimum sentence. (*Id.* at 5-6, 17-19, 23, 24-25). Movant also told the Court about his difficult childhood. (*Id.* at 25-26). After hearing from both sides, the Court agreed with the Government that the upward departure for the attempted murder applied, and sentenced Movant to a total of life imprisonment. (*Id.* at 18, 29-32; Doc. 279). Movant's counsel objected to the procedural reasonableness of the upward departure and to the substantive reasonableness of the sentence as a whole. (Doc. 299 at 33).

Movant filed a direct appeal with the Eleventh Circuit and raised four claims, that the Court committed error by: (1) failing to hold a formal *Daubert* hearing before admitting expert fingerprint evidence;[7] (2) admitting lay identification testimony by two FBI case agents who met with Movant upon his arrest; (3) instructing the jury on flight and concealment; and (4) by applying the bodily restraint sentencing enhancement to three of the nine robberies. *Ware*, 69 F.4th at 835. The Eleventh Circuit affirmed Movant's convictions and sentences on June 1, 2023, *id.*, and the United States Supreme Court denied Movant's application for a

---

[7] In a hearing pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that courts must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

petition for certiorari on April 22, 2024. *Ware v. United States*, __ U.S. __, 144 S. Ct. 1395 (Apr. 22, 2024).

Movant executed the instant §2255 motion to vacate his sentences on February 24, 2025. (Doc. 342). Therein, he raises several claims for ineffective assistance of counsel, for counsel's failure to:[8]

(1)    communicate with Movant and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial, specifically, that he would face at least a thirty-year sentence and up to life imprisonment if convicted;

(2)    conduct an adequate and independent pretrial investigation, particularly the validity of the initial arrest warrant and not requesting funds for a private investigator;

(3)    attempt to negotiate a favorable plea agreement;

(4)    challenge the basis for the initial arrest warrant;

(5)    subpoena and call defense witnesses on Movant's behalf to help prove his case;

(6)    highlight at trial the absence of Movant's co-defendant's testimony;

(7)    request a competency hearing;

(8)    request unspecified jury instructions;

---

[8]    Although Movant had three lead attorneys throughout the proceedings, it appears that he only raises ineffective assistance of his last counsel, R. Gary Spencer. (*See* Doc. 342 at 10). Consequently, the Court will set forth Movant's claims simply as ineffective assistance of counsel instead of using the separate categories of pre-trial, trial, and sentencing counsel that Movant uses.

(9)   file substantive objections to the PSR, including the attempted murder enhancement;

(10)   argue for mitigation of punishment;

(11)   object to his sentence being subjectively unreasonable; and

(12)   raise any of these issues on appeal.[9]

(Doc. 342).

II.   Discussion

A.   Standard of Review

A federal prisoner may file a motion to vacate his sentence under 28 U.S.C. §2255 if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (footnote omitted). Because the record is sufficiently developed to determine the issues here, the Court finds that an

---

[9]   After liberally construing the motion and including additional claims Movant appears to raise, for ease of reference and discussion the Court has re-enumerated Movant's grounds for relief. As does the Government, this Court will only analyze Movant's specific alleged errors as opposed to the generalized grounds that counsel was ineffective for failing to inform Movant of "his strategy, any affirmative defenses, and his theory of defense" [Doc. 342 at 5] or "[c]orrectly discuss and explain the PSR" with Movant before the sentencing hearing [*id.* at 6], since his specific claims are encompassed within these broad statements.

evidentiary hearing is not necessary. *See, e.g., Dickey v. United States*, 856 F. App'x 809, 811 (11th Cir. 2021) (per curiam) ("A district court is not required to grant an evidentiary hearing in a §2255 proceeding if the case's records conclusively show the prisoner is not entitled to relief or if his claims are patently frivolous.").

### B.      Ineffective Assistance of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A [movant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a movant is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). Significantly, "[s]crutiny of counsel's performance should be highly deferential and include a strong presumption that the conduct 'falls within the wide range of reasonable professional assistance[.]'" *Mackendrick v. Sec'y, Fla. Dep't of Corr.*, No. 23-13862, 2025 WL 3141739, at *1 (11th Cir. Nov. 10, 2025) (per curiam).

To establish prejudice, a movant must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d

13

740, 750 (11th Cir. 2010). The *Strickland* test also applies to plea negotiations. *See Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012). To establish prejudice where the alleged ineffective advice led to an offer's rejection, a movant must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018); *see also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) (per curiam) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (per curiam) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Movant has not demonstrated either.

C.      Movant's Allegations of Counsel's Deficiencies in Grounds 2, 3, 5, 7,
        9, 10, and 11 Are Contradicted by the Record.

As an initial matter, despite Movant's arguments to the contrary, the record

contradicts Movant's arguments of the failures of counsel about which Movant

complains in Grounds 2, 3, 5, 9, 10, and 11.  In those grounds for relief, Movant

claims that counsel failed to:  conduct an independent investigation of the facts and

hire a private investigator (Ground 2); attempt to negotiate a favorable plea

agreement (Ground 3); subpoena and call defense witnesses on Movant's behalf

(Ground 5); file substantive objections to the PSR, including the attempted murder

enhancement (Ground 9); argue for mitigation of punishment (Ground 10); and

object to Movant's sentence being subjectively unreasonable (Ground 11).  Counsel,

however, actually performed all of these actions.  (*See* Doc. 297 at 19-30 (defense

investigator testifying at trial); Doc. 348-2 at 1-3 (plea negotiations); Doc. 297 at 19-

32 (called defense witnesses); Doc. 276 at 2-11, Doc. 299 at 5-6, 17-18 (objected to

attempted murder and physical restraint enhancements and §924(c) sentencing

issues); Doc. 276 at 11-18 and Doc. 299 at 18-20 (argued mitigation circumstances);

Doc. 299 at 33 (objecting to sentence as procedurally and substantively

unreasonable); *see also* Doc. 149 at 2 and Doc. 230 at 1-2 (noting that Mr. Spencer

was appointed only forty-five (45) days before the scheduled trial date and

immediately secured two continuances to allow him more time to prepare, and filed

multiple motions for expert and investigative services as well as motions seeking

15

dismissal, preclusion of evidence, and other relief)).  Because counsel did, in fact, engage in these actions, he cannot be ineffective for failing to do so.  Accordingly, Movant is not entitled to relief in connection with Grounds 2, 3, 5, 7, 9, 10, and 11.

      D.      <u>Movant's Remaining Ineffective Assistance of Counsel Claims are Without Merit.</u>

      1.      <u>Ground 1</u>

In Ground 1, Movant claims that counsel did not explain the consequences of going to trial versus taking a plea.  Movant does not argue that he was unaware of, or did not reject, the plea offers, only that he did not do so knowingly because he allegedly was not advised of the potentially longer sentence he would face if convicted at trial.

According to Movant, counsel did not apprise him that if he was convicted at trial he would face at least thirty years of imprisonment.  (Doc. 342 at 32).  That statement is belied by the record.[10]  First, Movant does not claim that he was unaware

---

[10]     The Government relies on emails of the plea negotiations to argue that counsel informed Movant of the consequences of going to trial versus pleading guilty "when counsel presented him with the government's two plea offers, the second of which specifically discussed the mandatory minimum and statutory maximum that Movant faced."  (Doc. 348 at 10).  Movant responds that whether counsel adequately explained that he faced a "*de facto* life sentence" if convicted is not demonstrated from the email exchanges, since it does not provide the actual advice counsel gave him.  (Doc. 352 at 3-4).  The Court agrees that the email exchanges, while indirect evidence that allows an inference of what advice was given, are not directly dispositive on that issue. The Court therefore does not rely on these emails as the sole basis to recommend denying Movant's claim. As discussed more thoroughly herein, however, the entire record belies Movant's claim that he was unaware of the

of the two plea offers for fifty and forty-one years respectively. It is flatly inconsistent with these offers – both of which were well over thirty years – for Movant to somehow not be facing sentences of at least these lengths if convicted without a plea deal. It is also not plausible for these offers to have been communicated to Movant without counsel informing him – or without Movant asking – as to the alternative sentence risk that he faced.

Secondly, even more concretely, Movant was present at a motions hearing on March 18, 2019 where the Government stated that once the grand jury returned the superseding indictment Movant would be facing a mandatory minimum of fifty-five (55) years – again, well over thirty years – and significantly, the grand jury returned the superseding indictment the next day.  (Doc. 118; Doc. 122; Doc. 292 at 6).  The record, therefore, entirely contradicts Movant's assertion that he did not know that he faced at least a thirty-year sentence after trial.

Insofar as Movant claims that counsel did not explain that he could receive life imprisonment, that argument also is implausible.  When counsel conveyed to Movant the last plea offer for forty-one (41) years with a fifty (50) year cap, the Government drafted a plea agreement for counsel to bring with him to explain to Movant the details of any such plea.  (Doc. 348-2 at 1).  That draft plea agreement

---

risks of going to trial and that he would have taken an available plea offer had he known of those risks.

specifically stated that the maximum term of imprisonment for Counts 3, 5, 7, 9, and 11 is life imprisonment. (Doc. 348-2 at 7-11). After counsel returned from visiting Movant with the offer and draft plea agreement, counsel conveyed to the Government that Movant declined the offer. (Doc. 348-3 at 1). Movant's allegation that he did not know he faced a life sentence simply is not plausible.

Regardless, even if Movant was not aware that he faced a life sentence on several counts, and despite his present self-serving statement to the contrary, Movant has not shown that there is a reasonable probability that he would have accepted a plea but for counsel's alleged failure to so advise him.[11] *See Coulter v. Herring*, 60

---

[11]   Movant states that counsel's errors: "deprived [him] of the opportunity to evaluate his options and *make an informed decision regarding a plea*;" that he "would have accepted a *more favorable plea* or received a substantially lower sentence;" that he *might have considered* accepting a plea offer;" and "*could have negotiated a better outcome*" or a "*more favorable plea agreement*." (Doc. 342 at 32, 40-42 (emphasis added); Doc. 352 at 12 (emphasis added)). Notably, all of these statements are equivocal, and Movant does not actually say that he would have accepted the plea that he was offered, which alone defeats his ineffective assistance of counsel claim. *See, e.g., Oliver v. United States*, 292 F. App'x 886, 887 (11th Cir. 2008) (per curiam) (finding where movant stated only that he would have "seriously considered" the government's plea offer any such statement fell short of the required standard of demonstrating prejudice); *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (per curiam) (finding movant's statement that he did not know whether he would have accepted a guilty plea but for counsel's error insufficient to show prejudice).

It is also important to note that the Government indicated that the last offer of forty-one years with a fifty-year cap was the most favorable deal the Government could provide "given the egregious nature of [Movant's] conduct." (Doc. 348-3 at 2). Thus, there was no such "more favorable plea" that would have been offered, accepted, and presented to the Court, *see Lafler*, 566 U.S. at 164, and Movant's

F.3d 1499, 1504 (11th Cir. 1995); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991). Indeed, Movant has not cited to any record evidence to indicate that prior to his convictions he expressed any desire to enter a plea after he adamantly rejected the first offer. In fact, the evidence in the record supports the contrary, as Movant continuously maintained his innocence and his desire to go to trial. (*See, e.g.,* Doc. 61 at 1 (stating that counsel refused to present facts to show his innocence "knowing that I'm not guilty of this crime"); Doc. 305 at 6 (counsel telling the Court after Movant rejected the fifty-year offer that he has maintained his innocence and wants to proceed to trial), at 10 (Movant telling the Court that he conducted his own factual and legal investigation to prove to the Court that he is innocent).

Movant's lack of any showing that he would have admitted guilt that he has always denied by itself refutes the suggestion that he would have accepted a guilty plea. It is also facially absurd for Movant to suggest, having rejected a plea offer knowing that his convictions at trial would subject him to *at least* fifty-five (55) years in jail, that he would somehow have accepted that plea had he known that he faced a possibility that the sentence could be a bit longer depending on how long he

---

statement that he would have accepted a more favorable plea is wholly insufficient to demonstrate prejudice. *See, e.g., Guyton v. United States*, No. CV412-241, 2013 WL 1808761, at *4 (S.D. Ga. Apr. 29, 2013) (finding petitioner did not show prejudice where he "sp[oke] only hypothetically ('would have plead guilty'), and on a deal that was simply never offered"), *report and recommendation adopted*, 2015 WL 5168484 (S.D. Ga. Sept. 2, 2015).

were to live. The Court finds it patently incredible that Movant was unaware of this risk, and that he has failed to show that any such lack of awareness would have been remotely material to his steadfast refusal to consider a plea.

Thus, Movant's after the fact statement, without more, is insufficient to show that he actually would have accepted the Government's plea offer. *See, e.g., Diaz*, 930 F.2d at 835 (finding defendant's after the fact statement concerning his desire to plead, without more, to be "insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."); *Byron v. United States*, No. 1:21-CR-20553-PCH, 2025 WL 786282, at *7 (S.D. Fla. Mar. 12) (finding, *inter alia*, "the Court's conclusion that Movant would not have accepted the plea offer is supported by Movant's 'repeated assertions of innocence'"), *appeal dismissed*, No. 25-11268-F, 2025 WL 1950876 (11th Cir. May 7, 2025); *Mitchell v. United States*, No. 2:11-CV-08034-IPJ-HGD, 2013 WL 3833049, at *5 (N.D. Ala. July 23, 2013) (finding the fact that petitioner, *inter alia*, "maintained his innocence throughout trial and insisted that counsel proceed to trial" undermined any claim that he would have accepted a plea).  Accordingly, Movant is not entitled to relief in connection with Ground 1.

2.    Ground 4

Movant argues in Ground 4 that counsel should have challenged the basis for the initial arrest warrant.  As discussed previously herein in Section I.B., Movant

20

raised the issue that there was no probable cause for the arrest warrant ad nauseam during the pretrial proceedings, despite the Court's repeated rejection of this issue from both a probable cause and ineffective assistance of counsel standpoint.  As the Court told Movant on many occasions, any challenge to the basis of the arrest warrant were without merit based on the fact that there were several subsequent independent findings of probable cause – including, but not limited to, three indictments by the grand jury.  *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) ("The Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by Oath or affirmation' – a requirement that may be satisfied by an indictment returned by a grand jury[.]"); *United States v. James*, 831 F. App'x 442, 447 (11th Cir. 2020) (per curiam) (rejecting defendant's claim that Fourth Amendment rights were violated when he was arrested without a determination of probable cause because the grand jury found probable cause when it issued its indictment).

What's more, not only did the Court inform Movant that the independent findings of probable cause rendered his challenge to the arrest warrant meritless, but the Court also explicitly made its own finding of probable cause.  (Doc. 151 at 2-3 (report and recommendation ("R&R") recommending denying Movant's motion to challenge probable cause basis of arrest warrant because "the Complaint [1] is based on probable cause"); *see also* Doc. 157 (order adopting R&R)).  Counsel, therefore,

could not have been ineffective for failing to raise this meritless argument. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1170 (11th Cir. 2020) ("[W]e have repeatedly held that if a particular claim itself is without merit," any failure of counsel to raise or adequately pursue it "'cannot constitute ineffective assistance of counsel.'") (citations omitted); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) ("[A]ny deficiencies of counsel in failing to raise or adequately pursue [a meritless claim] cannot constitute ineffective assistance of counsel."); *see also Henderson v. Dugger*, 925 F.2d 1309, 1319-20 (11th Cir. 1991) (finding appellate counsel not ineffective for failing to raise claim identical to claims already rejected by the court because counsel could have reasonably concluded that such a claim would be fruitless). Likewise, because the Court rejected this claim on several occasions, Movant cannot demonstrate that there is a reasonable probability that the outcome would have been different had counsel raised the issue. Accordingly, Movant is not entitled to relief in connection with Ground 4.

### 3.    Ground 6

Movant claims in Ground 6 that counsel failed to address the Government's "unfulfilled promise" to present co-defendant Smith as a witness since "the jury was led to believe he would testify." (Doc. 342 at 44). According to Movant, counsel should have brought this issue to the jury's attention so as to highlight "the weakness" in the Government's case. (*See* Doc. 342 at 44).

The Court first notes that the Government's case was anything but weak. *See Ware*, 69 F.4th at 850 n.14 (finding harmless certain testimony by the detective because that testimony "constituted a mere drop in the, at the very least, bathtub of evidence the Government presented"). Perhaps even more importantly, however, other than stating that it happened "during the trial" [Doc. 342 at 43], Movant provides no information of when, where, or how he claims the Government made this "promise" to the jury, and it is not clear from the record since the Government said nothing whatsoever during its opening statement about calling Smith as a witness.[12] (*See* Doc. 294 at 4-10). Movant, therefore, cannot demonstrate that counsel's failure to address this nonexistent promise caused him prejudice, and accordingly, he is not entitled to relief in connection with Ground 6.

---

[12] It is possible that this alleged promise came from the Government's placement of Smith on its witness list before trial, which was discussed during the hearing on the Government's motion in limine. (*See* Doc. 293). Specifically, the Government wanted to ensure that Movant would not mention any potential penalty he was facing, and Movant's counsel clarified that Smith was on the Government's witness list and that Movant would be allowed to cross-examine Smith about the sentence he received for his plea. (*See* Doc. 293 at 13). It should go without saying that by no means is a witness list a "promise," and the discussion during the hearing was not in front of the jury.

4.      Ground 7

In Ground 7, Movant claims that counsel should have requested a competency hearing.[13]  Since Movant's first counsel requested a psychiatric examination and competency hearing, the Court granted that request, and the evaluation found that Movant was competent to stand trial, it is not clear what, if anything, a request for a competency hearing would have accomplished had Mr. Spencer done so in the eleventh hour before trial after he was appointed.[14]  Any request not to revisit this issue was nothing more than a reasonable, professional decision.  *Cf. Anderson v. Wright*, No. 5:18-CV-00971-MHH-SGC, 2019 WL 11718790, at *13 (N.D. Ala. Nov. 26, 2019) (finding no ineffective assistance for failing to seek a competency hearing where medical reports indicated the petitioner was competent), *report and recommendation adopted*, 2021 WL 409711 (N.D. Ala. Feb. 5, 2021); *Samuels v. Crickmar*, No. CV 113-084, 2014 WL 4463240, at *16 (S.D. Ga. Sept. 10, 2014) (denying §2254 habeas petition and finding reasonable, *inter alia*, state court's decision that counsel was not ineffective for failing to insist on a competency hearing

---

[13]     As discussed previously herein, Movant raises all of his ineffective assistance claims based on Gary Spencer's actions.  Since Movant's first counsel, Paul Cognac, requested the examination and competency hearing, the undersigned does not discuss this claim under the analysis in Section II.C. which addresses actions Spencer did perform even though Movant argued that he did not do so.

[14]     Mr. Spencer was initially appointed forty-five days before the trial date before he secured two continuances.  (*See* Doc. 230 at 1-2).

after requesting and receiving a psychiatric evaluation which found petitioner competent to stand trial). What's more, counsel did, in fact, secure a psychological evaluation as one more piece of mitigating evidence to provide to the Court at sentencing.

Movant also cannot demonstrate prejudice, as "[a]n attorney's decision not to pursue a claim of incompetency does not amount to prejudice unless a petitioner can raise a real, substantial, and legitimate doubt as to his mental competency at the time of trial." *Dickerson v. United States*, No. 21-14226, 2022 WL 17660314, at *2 (11th Cir. Dec. 14, 2022) (per curiam). And "to establish prejudice, [Movant] must show that 'there was a reasonable probability that he would have received a competency hearing *and* been found incompetent had counsel requested the hearing.'" *Id.* (quoting *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir. 2012)). Movant has indicated nothing whatsoever, let alone "a real, substantial, and legitimate doubt as to his mental competency" that would lead to a different competency finding.[15] *See Anderson*, 2019 WL 1171870, at *13 (finding petitioner

---

[15] Indeed, Movant simply states that the failure to request a competency hearing "despite Dr. Flores' evaluation highlighting Ware's difficult life and severe depression, was a significant oversight." (Doc. 342 at 44). Importantly, however, those factors do not indicate "a present inability to assist counsel or understand the charges," *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995), and the previous evaluation determined that Movant did not have any such inability. *See, e.g., Travis v. United States*, No. 1:06-CR-0296-ODE-CCH-1, 2010 WL 11629171, at *3 (N.D. Ga. Oct. 21, 2010) (finding reasonable counsel's decision not to seek further evaluation after psychiatric examination revealed bipolar disorder and

provided no evidence that had counsel moved for a competency hearing there would have been a reasonable likelihood it would have been granted and that he would have been found incompetent to stand trial); *cf. Moore v. Campbell*, 344 F.3d 1313, 1325 n.10 (11th Cir. 2003) (per curiam) (agreeing with district court that defendant failed to establish that the evidence before the state court established a "bona fide doubt" regarding his competency to stand trial where trial judge ordered competency evaluation after defendant attempted suicide and was assured he was competent to stand trial).

Movant points to no evidence, let alone evidence that would establish a "bona fide doubt" regarding his competency to stand trial. Thus, Movant has failed to show that he would have been granted a competency hearing if counsel had requested it *and* that he would have been found incompetent. Accordingly, Movant is not entitled to relief in connection with Ground 7.

5.    Ground 8

Movant claims in Ground 8 that counsel "should have written and requested certain jury instructions to ensure the jury's proper understanding of the law as it

---

depression, but did not demonstrate that the movant was unable to understand the nature and consequences of the proceedings or to assist in his defense); *see also United States v. Williams*, 262 F. App'x 165, 174 (11th Cir. 2008) (per curiam) (affirming district court's denial of motion for competency hearing because depression and mental incompetence were "two entirely different things" and no medical report or other prior medical opinion indicated that treatment affected the competency to stand trial in any way).

related to the facts of this particular case" and that it was counsel's "duty to instruct the jury and the court properly regarding the circumstances." (Doc. 342 at 45). Movant, however, does not specify what instructions he claims counsel should have requested, and he therefore cannot demonstrate that the failure to do so constituted deficient performance or caused him prejudice. *See Harris v. United States*, No. 24-10991, 2024 WL 5505916, at *1 (11th Cir. Nov. 4, 2024) (denying certificate of appealability where, *inter alia*, the appellant's ineffective assistance claim for "neglected jury instructions" were too conclusory to warrant relief as he "failed to provide any concrete arguments or evidence" to support the claim); *Mejia-Duarte v. United States*, No. 1:20-CV-24697, 2024 WL 1445823, at *30 (S.D. Fla. Jan. 24) (finding no basis for habeas relief where "Movant's claim that [counsel] rendered ineffective assistance of counsel when he did not file proposed void dire questions or jury instructions is entirely conclusory, cites to no legal authority in support of finding deficient performance, and identifies no prejudice whatsoever"), *report and recommendation adopted*, 2024 WL 1107681 (S.D. Fla Mar. 14), *certificate of appealability denied*, No. 24-11547, 2024 WL 5691691 (11th Cir. Dec. 16, 2024); *United States v. Colon*, No. CR 09-297, 2013 WL 12222606, at *1 n.1 (E.D. Pa. Aug. 2, 2013) (summarily rejecting claim that counsel did not object and/or request proper jury instructions because the petitioner failed to identify which jury instruction or instructions were at issue); *see also Wilson v. United States*, 962 F.2d

996, 998 (11th Cir. 1992) (per curiam) ("Conclusory allegations of ineffective assistance are insufficient.") (internal quotation marks and citation omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding insufficient conclusory claims of ineffective assistance lacking factual substantiation).

Regardless, during the charging process Movant's counsel proposed jury instructions and objected to several of the Government's proposed instructions. (Doc. 202; Doc. 297 at 4-17). Movant has not demonstrated how counsel was deficient in this regard or how Movant was prejudiced thereby. Accordingly, Movant is not entitled to relief in connection with Ground 8.

### 6. Ground 12

Finally, Movant claims in Ground 12 that counsel failed to raise any of these issues on appeal. Movant cannot show that counsel's decision not to raise these meritless claims was anything other than reasonable or that he was prejudiced thereby. *See United States v. Winfield*, 950 F.2d 970, 974 (11th Cir. 1992) (per curiam) (stating that appellate counsel is not ineffective for failing to raise a frivolous argument); *see also Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) (per curiam) (stating that appellate counsel's performance will only be deemed prejudicial if "'the neglected claim would have a reasonable probability of success on appeal'"). Accordingly, Movant is not entitled to relief in connection with Ground 12.

III.    Conclusion

Based on the foregoing reasons, **IT IS RECOMMENDED** that Dravion Sanchez Ware's motion to vacate his sentence [Doc. 342] be **DENIED WITH PREJUDICE**.

IV.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."    In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."    *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other

words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that counsel did not provide ineffective assistance. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 14th day of May, 2026.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE